UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

CHRISTINE NYGREN                           CIVIL ACTION NO. 2:20-CV-02714
                    Plaintiff
v.                                         DISTRICT JUDGE: LANCE M. AFRICK

DOLLAR TREE STORES, INC.                   MAGISTRATE: DANA M. DOUGLAS
                    Defendant

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.      SUMMARY OF ARGUMENT

Plaintiff, Christine Nygren, asserts claims of age-discrimination, retaliation and hostile work environment against her former employer, Dollar Tree Stores, Inc. (hereinafter "DTS" or "Defendant"), under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA") and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.* (the "LEDL").  Plaintiff was one of six Zone Human Resources Directors ("Zone HR Directors") for Defendant.  Ms. Nygren supported Zone 5, which included DTS stores in multiple states, including Texas.  It is undisputed that the Zone VP of Operations for Zone 5 (Brian Prettyman) resided in Dallas, Texas.  Throughout the time she held this position, Ms. Nygren lived in Metairie, Louisiana, which is not located within Zone 5.

On July 13, 2018 Vice President of Human Resources Steven Schumacher advised Ms. Nygren (age 69) and two other Zone HR Directors (Terri Peters (age 56)[1] and Jerry Sankey (age 65), who also did not live in their Zones) that they would be required to relocate to live in their Zones.  Mr. Schumacher advised each that they would be provided financial relocation assistance and would be required to move to the city which best supported the Company's business objectives.  It is undisputed that the other three Zone HR Directors (Mary Ann Fulner (age 52),

---

[1] Ms. Peters re-married and her last name became Nathan.  Certain exhibits attached to Defendant's motion reference the last name Peters, while others reference the last name Nathan.  But this is the same individual.

Karen Rhoten (age 55) and Jeremy Mapes (age 45)) already lived in their respective Zones, and for this reason, were not required to relocate.  Plaintiff claims that the relocation requirement was age discrimination, and that she was subjected to retaliation for opposing this allegedly discriminatory practice.  Ms. Nygren also asserts a frivolous claim for "*quid pro quo*" age discrimination (a cause of action that does not exist) and alleges that she was subjected to an age-based hostile work environment based on two benign retirement dinners she attended (which did not involve any age-based or other mistreatment of Ms. Nygren).

Plaintiff's claims of age discrimination and retaliation based on the relocation requirement are time-barred, because Plaintiff did not file a timely charge of discrimination with the EEOC within 300 days of the relocation requirement being communicated to her – including the specific requirement that she had to relocate to Dallas, Texas.  Under controlling Fifth Circuit and U.S. Supreme Court case law discussed below, her time limit for filing a charge began to run at the point when the relocation requirement was communicated to her in July 2018,[2] not in April 2019 when her employment with Defendant ended due to her decision not to relocate.  Ms. Nygren's LEDL claims are also time-barred because she did not file her Complaint within the applicable limitations period under state law.

Plaintiff's claims of age-discrimination claim also fails on the merits due to lack of evidence. Plaintiff has no direct evidence that age was the reason for the relocation requirement. Plaintiff also has no evidence to show that Mr. Schumacher did not rely on the articulated business reasons for the requirement or other evidence showing that her age was a "but for" cause for this employment decision.  Plaintiff's comparison to the three younger Zone HR Directors who were not required to relocate provides no evidence of age discrimination because

---

[2] Even if the time for filing a charge did not begin to run until August 7, 2018, at which point Ms. Nygren concedes she was told of the specific Dallas relocation requirement, her EEOC charge is still untimely.

Ms. Nygren and these three comparators were not "similarly situated." It is undisputed that the three comparators already lived in their respective Zones, and this is why Mr. Schumacher did not require them to relocate.

Plaintiff's claim of retaliation under the ADEA fails because she has no evidence to prove that she suffered adverse employment action as the result of her opposition to age-based discrimination. It is well-settled that the LEDL does not provide a cause of action for retaliation.

Plaintiff's claim for "*quid pro quo*" age discrimination simply does not exist under the ADEA or the LEDL. It is a frivolous claim. Plaintiff's claim for an alleged age-based hostile work environment is also frivolous because she has no evidence that she was subjected to a severe or pervasive hostile work environment based on her age.[3]

## II.    STATEMENT OF UNCONTESTED MATERIAL FACTS[4]

Ms. Nygren was 69 years old at the time of her separation from DTS on April 5, 2019. She was hired by DTS as a District Manager at age 48, and held that position until February 1998.[5] In 2001 Plaintiff was promoted to the position of Zone HR Director, the position she held until she left the Company on April 5, 2019.[6] Throughout this period she lived in Metairie, Louisiana.[7] In May 2015 Plaintiff became the Zone HR Director for Zone 5. Ms. Nygren originally reported to Mr. David McDearmon.[8] In 2016 Ms. Nygren formed a belief that she was denied a Zone assignment based on her age, but did not lodge an internal complaint or file an

---

[3] During the pre-filing conference on Defendant's Motion for Summary Judgment on April 13, 2021, the Court requested that the Plaintiff's counsel contact his client and discuss voluntary dismissal of the *quid pro quo* and hostile work environment claims to avoid wasting time and resources in addressing these meritless claims. The Plaintiff has refused to do so.

[4] The following statement of facts is supported by the deposition testimony of the Plaintiff (excerpts of which are attached as Exhibit 1), certain exhibits attached to the Plaintiff's deposition and the Unsworn Declaration of Steve Schumacher (attached as Exhibit 2). For purposes of this motion, DTS accepts the following statement of facts as true, but expressly reserves the right to dispute these facts at trial on the merits.

[5] Exhibit 1 at pp. 32-34.

[6] Exhibit 1 at pp. 35 and 39-40.

[7] Exhibit 1 at pp. 40-41.

[8] Exhibit 1 at p. 42.

EEOC charge regarding this issue.[9]  Ms. Nygren is not asserting any claims in her Complaint based on matters that occurred during that timeframe.[10]

In her position of Zone HR Director, Plaintiff was responsible for handling human resources issues, employee hiring and counseling and also supervised Regional HR Managers who were responsible for HR issues for regions inside the Zone.  Ms. Nygren was also responsible for ensuring that DTS was compliant with fair employment laws prohibiting employment discrimination and was familiar with the Company's policies on these subjects.[11] Plaintiff's duties are accurately reflected in the written job description for the position that she produced in discovery.[12]  Ms. Nygren was aware that DTS had an equal employment opportunity policy[13] that, among other things, prohibited age discrimination with respect to the terms and conditions of employment and harassment and also prohibited forced retirement.[14]  Ms. Nygren also understood that she was an at-will employee.[15]

The DTS Field Operations Map for 2018 accurately depicts the Zones of Operation, including Zone 5 that Ms. Nygren was responsible for supporting, as well as the names of the other five Zone HR Directors.[16]  The Zone Vice President of Operations for Zone 5 in 2018 was Brian Prettyman.  Mr. Prettyman reported to Senior Vice President of Operations Tom McAloon. Mr. Prettyman did not report to Steven Schumacher.[17]

In March or April of 2018, Steven Schumacher became the Vice President of Human

---

[9] Exhibit 1 Vol. II at pp. 221-237.
[10] Exhibit 1 at p. 44-45.
[11] Exhibit 1 at pp. 46-47.
[12] Exhibit 1 at p. 63, 67-68; copy of Zone HR Director job description attached hereto as Exhibit 3.
[13] Copies of the DTS EEO, no discrimination, no harassment and no retaliation policies that were in effect during 2018 are attached to the Unsworn Declaration of Steven Schumacher.  *See* Exhibit 2 at ¶¶ 6-8.
[14] Exhibit 1 at pp. 50-52.
[15] Exhibit 1 at pp. 53-54.
[16] Exhibit 1 at pp. 86-88; Copy of the Field Operations Map attached hereto as Exhibit 4.
[17] Exhibit 1 at pp. 95-96; Exhibit 2 ¶ 10.

Resources.[18] On July 13, 2018 Ms. Nygren had a telephone conversation with Mr. Schumacher regarding the relocation requirement.[19]  During this discussion Mr. Schumacher told Ms. Nygren that she needed to relocate to live within her Zone by February 1, 2019, and if she did not agree to do so she would be provided with a severance package and could retire.  Mr. Schumacher also said that financial relocation benefits would be made available to Ms. Nygren if she chose to relocate.[20]

Ms. Nygren could not recall if Mr. Schumacher told her that she would be required to relocate to Dallas, Texas during this initial discussion.[21]  She testified that either on that first call or on another call, when she mentioned that she was thinking of moving to Houston, Texas, Mr. Schumacher responded that he was thinking of Dallas.[22]  Plaintiff then testified that the Houston or Dallas discussion did not take place during that first call about the relocation requirement.[23] When asked about Mr. Schumacher's use of the term "retirement" during the July 13, 2018 telephone conversation, Ms. Nygren testified that he said "what we're going to do is we'll relocate you to your zone…or –or you can retire with – a severance package."[24]

The first discussion ended with Mr. Schumacher telling Ms. Nygren that he would look into concerns that she had raised about how a February 1, 2019 separation date would impact her performance bonus and restricted stock awards for 2018 and would get back to her.  Nothing

---

[18] Exhibit 1 at pp. 97-99; Exhibit 2 ¶ 4.
[19] Exhibit 1 at pp. 169-170; Exhibit 2 ¶ 13
[20] Exhibit 1 at pp. 177-178.
[21] Exhibit 1 at pp. 178-179.  Mr. Schumacher recalls that he told Ms. Nygren that she would be required to relocate to Dallas, Texas during the July 13, 2018 discussion.  Exhibit 2 ¶ 23, and the fact that Ms. Nygren's July 14, 2018 grievance email to Mr. Philbin discussed below stated that Mr. Schumacher had told her that she had to move to "Texas" (as opposed to anywhere within her multi-state Zone) makes clear that Mr. Schumacher's recollection of events is in fact correct.  However, for purposes of this motion only, Defendant will concede that Ms. Nygren was not told that she had to move to Dallas until August 7, 2018, as confirmed by her subsequent text message communications with Mr. Prettyman.
[22] Exhibit 1 at pp. 178-179.
[23] Exhibit 1 at p. 180.
[24] Exhibit 1 at p. 184.

further was said during this discussion.[25]  Ms. Nygren denies that Mr. Schumacher told her that she could apply for other open positions with Defendant.  But Plaintiff admits that she was familiar with the Company's Brass Ring job listing system, that she had full access to that system, and that nothing prevented her from applying for open positions if she wished to do so.[26]

The next day, on July 14, 2019, Ms. Nygren sent an email to Gary Philbin, the CEO of DTS, complaining about the relocation requirement.  Plaintiff began her email with the following statement: "I received a call yesterday, from Steve Schumacher.  **It seems I have until Feb 2019 to move to Texas – or I no longer have a job**." (emphasis added). She added "I understand what the motive is" and the towards the conclusion of the email Plaintiff stated "Now- at age 69 – **I am out-unless I pack up my belonging [sic] and move**." (emphasis added).[27]

Mr. Philbin responded to Plaintiff's email by explaining that the relocation requirement was based on the need for her "to be in the markets, close to the leadership you and the team interacts with" and directed Ms. Nygren to talk with Ms. Betty Click, the Chief People Officer for DTS, about the process.[28]  Plaintiff did not have a discussion with Ms. Click at that time.[29]

At the time she sent this email Plaintiff believed that the relocation requirement was age discrimination.  When asked whether the July 14, 2018 email to Mr. Philbin contained a complaint of age discrimination Ms. Nygren initially testified that it did not.[30]  She also admitted that she failed to follow Defendant's EEO and complaint procedures for reporting her concerns that age discrimination was occurring.[31]  Later in her deposition Ms. Nygren changed her testimony and claimed that she considered the mention of her age (69) in the text of the July 14,

---

[25] Exhibit 1 at pp. 181, 185-186.
[26] Exhibit 1 at pp. 186-189.
[27] Exhibit 1 at pp. 199-201; Copy of Ms. Nygren's email dated 7/14/19 attached hereto as Exhibit 5.
[28] Exhibit 1 at pp. 205-207; Exhibit 5.
[29] Exhibit 1 at pp. 208-209.
[30] Exhibit 1 at p. 209.
[31] Exhibit 1 at p. 210.

2018 email to be an implicit complaint of age discrimination.[32]

Ms. Nygren claims that during a subsequent discussion she told Mr. Schumacher that she "found it interesting" that she and another Zone HR Director, Jerry Sankey, had been told that they had to move or retire, while the third Zone HR Director who was required to relocate was told that she was told to move to Chicago or find a different job – and was not told that she had to retire or get a severance.[33] Ms. Nygren could not recall details of further conversations with Mr. Schumacher regarding the relocation requirement.[34]  Later, when asked about whether she complained to anyone at DTS about her belief that age discrimination has occurred, Plaintiff testified "probably not with Steve Schumacher."[35]  Ms. Nygren never complained verbally or in writing about perceived age discrimination to anyone in DTS Human Resources.  According to Plaintiff, "I wouldn't trust the people I had to report it to."[36]

Ms. Nygren admits the facts reflected in the following chart:

| ZONE | ZONE HR DIRECTOR(AGE) | PLACE OF RESIDENCE | LIVED IN ZONE? | ZONE VP | ZONE VP CITY OF RESIDENCE |
|------|------------------------|--------------------|----------------|---------|----------------------------|
| 1 | Mary Ann Fulner (52) | Killingworth CT | Yes | Doug Yost | Virginia Beach VA |
| 2 | Jerry Sankey (65) | Chesapeake VA | No | Russ Harden | Manteo NC |
| 3 | Terri Peters (56) | Virginia Beach VA | No | Dawn Martinez | St. Charles IL |
| 4 | Karen Rhoten (55) | Temecula CA | Yes | Ginger Chase | Las Vegas NV |
| 5 | Christine Nygren (69) | Metairie LA | No | Brian Prettyman | Dallas TX |
| 6 | Jeremie Mapes (45) | Dublin OH | Yes | Pete Barnett | Virginia  Beach VA |

---

[32] Exhibit 1 at pp. 353-356.
[33] Exhibit 1 at p. 211.
[34] Exhibit 1 at pp. 291-292.
[35] Exhibit 1 p. 314.
[36] Exhibit 1 p. 352.

Plaintiff admits that she and the two other Zone HR Directors who were required to relocate (Jerry Sankey and Terri Peters) did not live in their Zones, while the other three Zone HR Directors (Mary Ann Fulner, Karen Rhoten and Jeremie Mapes) who were not asked to relocate already lived in the Zones they supported.[37]   Mr. Schumacher did not require Ms. Fulner, Ms. Rhoten or Mr. Mapes to relocate because they already lived in the Zones they supported.[38]   Ms. Nygren admits that she did not participate in any decisions related to the relocation requirement and does not know the reasoning for its implementation.   When asked whether she knows if the management responsible for making the relocation requirement decided that the three Zone HR Directors who already lived in their Zones would not be required to relocate for that reason, Plaintiff responded "I have no idea, I never talked to anybody."[39]

On July 13, 2018 Mr. Schumacher informed Mr. Sankey that he would be required to relocate to either Atlanta, Georgia or Orlando, Florida, to which Mr. Sankey responded that he would not agree to the relocation requirement.[40]   Ms. Nygren does not dispute that Mr. Sankey was told he would be required to relocate to Atlanta to maintain his position as Zone HR Director for Zone 2, nor does she dispute that Ms. Peters was told that she would be required to relocate to Chicago, Illinois, in order to remain the Zone HR Director for Zone 3.[41] Ms. Nygren asked Mr. Schumacher if she could be re-assigned to Zone 2 because she was aware that Mr. Sankey had decided to retire. Mr. Schumacher told her she could if she would move to either Atlanta or Orlando.[42]

In an email exchange dated July 18, 2018 Ms. Nygren asked Mr. Schumacher to send her

---

[37] Exhibit 1 at pp. 212-216; Chart attached hereto as Exhibit 6; Exhibit 2 Unsworn Declaration of Steven Schumacher at ¶¶ 12-13.
[38] Exhibit 2 ¶ 19.
[39] Exhibit 1 at p. 217.
[40] Exhibit 2 ¶¶ 14, 24-25.
[41] Exhibit 1 at pp. 222-223; 226.
[42] Exhibit 1 at pp. 222-223.

the DTS employee relocation package, indicating that she would consider moving to Houston, Texas.[43]  Plaintiff acknowledges that the acceptance of the relocation benefits would require her to continue employment with DTS for a period of two-years, and that by providing the relocation package Mr. Schumacher was offering her an incentive to secure her continued employment for a period of at least two additional years if she accepted the offer of relocation benefits.[44]

Ms. Nygren cannot recall when she had her next discussion with Mr. Schumacher regarding the relocation requirement.[45]  But, based on text messages that Ms. Nygren exchanged with Brian Prettyman on August, 7, 2018, Plaintiff agrees that the discussion with Mr. Schumacher about the specific requirement to move to Dallas occurred prior to that date.[46]  Mr. Schumacher told Ms. Nygren that she would be required to move to Dallas because that is where the Zone VP of Operations for Zone 5 was located.[47]

During text message exchanges with Jerry Sankey on July 17, 2018, just four days after her meeting with Mr. Schumacher, Ms. Nygren discussed filing a class action lawsuit against the Company.[48]  Ms. Nygren revisited the issue of suing DTS in another string of text messages with Mr. Sankey dated September 21, 2018, and told him that she had heard back from one attorney and that "She is not talking about two or three times severance, she is talking about two or three years of pay and benefits."[49]

When asked if she ever gave Mr. Schumacher a clear response about whether she would agree to relocate to Dallas, Texas, Plaintiff testified "I don't think so."[50]  When Ms. Nygren

---

[43] Exhibit 1 at p. 250; July 18, 2018 email attached as Exhibit 7.
[44] Exhibit 1 at pp. 250-253.
[45] Exhibit 1 at pp. 247-248.
[46] Exhibit 1 Vol. II at pp. 86-89; text message exchange with Mr. Prettyman attached as Exhibit 8.
[47] Exhibit 1 at pp. 254-255.
[48] Exhibit 1 Vol. II at pp. 69-70; text message exchange with Mr. Sankey attached as Exhibit 9.
[49] Exhibit 1, Vol. II. at pp. 102-104; text message exchange with Mr. Sankey attached hereto as Exhibit 10.
[50] Exhibit 1 at p. 260.

brought up the possibility of moving to Houston instead, Mr. Schumacher told her "no."[51]

Mr. Schumacher presented Ms. Nygren with a series of severance packages.  In the letters that Mr. Schumacher sent to Ms. Nygren he used the term "retire" to confirm that Ms. Nygren's future separation from DTS employment would be considered a voluntary separation and was not termination for "cause," for purposes of her restricted stock option grants for 2016, 2017 and 2018.  Ms. Nygren's restricted stock grants were subject to a three-year vesting period and would not have been fully vested as of the future April 5, 2019 Separation Date, but if the separation was a retirement, Ms. Nygren's grants would immediately vest because she was more than $59^{1}/_{2}$ years old and had 7 years of service with DTS.[52]  Mr. Schumacher did not use the same language with respect to Ms. Peters' separation because she was not $59^{1}/_{2}$ years old and was not eligible for immediate vesting of her stock grants.[53]

The first severance proposal was dated September 7, 2018, and indicated that DTS had decided that all Zone HR Directors should reside in the geographic area they support, that Ms. Nygren had decided not to relocate to her zone and instead asked to continue her employment until she retired in April of 2019.  The letter indicated that Ms. Nygren would  continue in her role as a Zone HR Director, reporting to Steve Schumacher, "until April 5, 2019 ('Separation Date')."[54]  Mr. Schumacher emailed a second severance proposal to Ms. Nygren on October 5, 2019 which added certain COBRA health insurance premium payments to the severance benefits provided, but is otherwise the same as the prior severance proposal, including the stated "Separation Date" of April 5, 2019.[55]

On October 9, 2018 Ms. Nygren sent an email to DTS in-house attorney Kay Stockwell,

---

[51] Exhibit 1 at p. 261.
[52] Exhibit 2 ¶¶ 27-32.
[53] Exhibit 2 ¶ 33.
[54] Exhibit 1 at pp. 278-279; September 7, 2018 severance proposal attached hereto as Exhibit 11.
[55] Exhibit 1 at pp. 282-284; October 4, 2018 severance proposal attached hereto as Exhibit 12.

who she understood was responsible for drafting the DTS severance agreements, in which she stated "I then was told I had to move to Dallas, city specific.  I do not want to retire.  I'm being told move to Dallas or retire."[56]

Ms. Nygren received a third severance proposal from Mr. Schumacher on November 1, 2019.  This version stated "As we have discussed, Dollar Tree decided that all Zone Human Resources Directors should reside in the geographic area that they support, specifically Dallas for Zone 5.  You have decided not to relocate to Dallas and instead have asked to continue your employment until you retire in April 2019."  The letter restated the same "Separation Date" of April 5, 2019.[57] Ms. Nygren's last date of employment with DTS was April 5, 2019. She never told Mr. Schumacher or anyone else with the Company that she would move to Dallas, Texas prior to that date.[58]

Ms. Nygren admits that by the end of 2018 she may have told Mr. Schumacher "I'm not going to relocate to Dallas, …but I would entertain Houston.[59] By the end of December 2018 she had told Mr. Schumacher that she would not relocate to Dallas.[60]  Ms. Nygren understood that if she did not agree to relocate to Dallas her DTS employment would end on April 5, 2019.[61]

On January 14, 2019 Ms. Nygren sent an email to Mr. Schumacher which stated:  "Steve, since I noticed zone HR director job was posted last week, I announced on our zone call this a.m. of **my retirement** so they can hear from me on this."[62]  Ms. Nygren told the individuals on the group call that "I was supposed to move to Dallas to keep my job.  And I wasn't moving to Dallas."  Ms. Nygren initially denied telling the DTS Zone personnel on the call that she was

---

[56] Exhibit 1 at pp. 300-302; October 9, 2018 email attached hereto as Exhibit 13.
[57] Exhibit 1 at pp.286-287; October 16, 2018 severance proposal attached hereto as Exhibit 14.
[58] Exhibit 1 at p. 288.
[59] Exhibit 1 at p. 291.
[60] Exhibit 1 at p. 305.
[61] Exhibit 1 at p. 305-306.
[62] Exhibit 1 at p. 292; 1/14/2019 email attached hereto as Exhibit 15.

retiring, but when pressed about whether she used the term retirement in the group conference call, she testified "I may have."[63]

The posting of Ms. Nygren's position indicated that the job was going to be in Dallas, Texas.[64]  Plaintiff was replaced by Ms. Jackie Richardson, who was hired to fill the Zone HR Director position for Zone 5 and who at all times since her hire by DTS has lived in the Dallas metropolitan area.  Mr. Sankey was replaced in Zone 2 by Ms. Tanya Rowe-Hill, who at all times has lived in Atlanta, Georgia, while Ms. Peters was replaced in Zone 3 by Bernadette Noland, who at all times has lived in the Chicago metropolitan area.[65]

On February 13, 2019, Plaintiff's counsel wrote a letter to Defendant asserting claims of age discrimination on behalf of Ms. Nygren and presenting settlement demands.[66] By letter dated March 6, 2019, Ms. Beth Berman, Defendant's Deputy General Counsel, responded that no age discrimination had occurred, but indicated that in light of Ms. Nygren's stated personal reasons for wanting to relocate to Houston, Defendant would agree to that move, but reserved the right to change Ms. Nygren's Zone and/or required home base in the future if it determined that Dallas would be more appropriate.[67]

Ms. Nygren received a copy of Ms. Berman's letter from her attorney.[68]  Mr. Schumacher contacted Ms. Nygren sometime between March 6 and March 15, 2019 and told her that DTS would be happy to have her in Houston.  Plaintiff responded by telling Mr. Schumacher "you gave me a date of April 5th I had to be out.  But we've had this conversation since July 13th and

---

[63] Exhibit 1 at pp. 293-296.
[64] Exhibit 1 at p. 296.
[65] Exhibit 2 ¶¶ 38-41.
[66] Exhibit 1 at p. 313.  Plaintiff counsel's February 13, 2019 letter is marked as a confidential and privileged settlement communication pursuant to Federal Rule of Evidence 408, is not admissible, and is therefore not attached as an Exhibit.
[67] Exhibit 1 at pp. 316-318; letter from Ms. Berman dated March 6, 2019, a copy of which is attached hereto as Exhibit 16.  Ms. Berman's letter to Mr. Lilly is not marked as a confidential settlement communication and is therefore admissible evidence.
[68] Exhibit 1 at p. 319.

you've said no, no, no.  As soon as I get an attorney, things change.  I can't talk to you anymore.  You call my attorney, I'm not having any more conversation with you."  Ms. Nygren testified that she was aggravated and wasn't going to deal with Mr. Schumacher anymore.[69]

There is no evidence that Mr. Schumacher or anyone else involved in the relocation requirement decision made age-based comments in the context of that decision.[70]

When asked to explain the factual basis for her claims of age-based harassment, Ms. Nygren testified that she attended two retirement dinners - one in January 2019 and another that was held in March 2019.  Plaintiff admits that there was no age-based harassment or mistreatment of any kind at either of these dinner events.[71]

The only retaliation Ms. Nygren has identified is the allegation that when she offered to move to Houston, Mr. Schumacher changed the relocation requirement to Dallas, Texas.[72]  But when asked to explain how changing the relocation request to specify Dallas, Texas was retaliatory, Ms. Nygren admitted, "I don't know what retaliation.  I don't know what's in their mind.[73]

Ms. Nygren received her final performance evaluation from Mr. Schumacher on March 25, 2019.  She received a "meets expectation rating" and received her annual bonus, stock grants and a merit pay increase.  She considered this to be a good evaluation and did not consider this to be age discrimination or retaliation.[74]  Ms. Nygren's separation from employment with DTS was coded as "TN-4," which stands for retirement.  Because Ms. Nygren's separation was classified as a retirement, and not as a termination for Cause, her restricted stock options for 2016, 2017 and 2018 fully and immediately vested, which provided substantial financial benefits to

---

[69] Exhibit 1 at pp. 325-326.
[70] Exhibit 1 Vol. II at pp. 202-204.
[71] Exhibit 1 at pp. 328-335.
[72] Exhibit 1 at p. 350.
[73] Exhibit 1 at pp. 349-351.
[74] Exhibit 1 at pp. 358-360.

Plaintiff.[75]

Ms. Nygren's last day of employment with Defendant was April 5, 2019.  Plaintiff's employment terminated on that date because she did not comply with the relocation requirement communicated to her on July 13, 2019.  She refused to relocate to either Dallas, as originally requested, or Houston, as was offered to her in March, 2019.[76]  Ms. Nygren did not file her charge of employment discrimination with the EEOC until October 22, 2019.[77]  Plaintiff filed her Complaint in this case on October 4, 2020.[78]

Jerry Sankey (Zone 2) and Terri Peters (Zone 3) also separated from DTS employment on April 5, 2019.  Both accepted the severance proposal that was presented to them by DTS.[79]  Neither Mr. Sankey nor Ms. Peters have any personal knowledge regarding the facts and circumstances of Ms. Nygren's situation relative to the relocation requirement.[80]  Mr. Sankey and Ms. Peters do not have any factual evidence that the application of the relocation to them was based on their age or that either of them experienced age discrimination during their DTS employment.[81]

### III.    ARGUMENT[82]

#### A.    Plaintiff's Claims of Age Discrimination and Retaliation Based on the Relocation Requirement are Time-Barred

---

[75] Exhibit 2 ¶¶ 27-31; 37-38.

[76] Exhibit 2 ¶¶ 26; 34-37.

[77] Exhibit 1 at pp. 383-384; EEOC Charge dated October 22, 2019 attached hereto as Exhibit 17.

[78] Record Doc. 1.

[79] Exhibit 2 ¶ 25.

[80] *See* deposition testimony of Jerry Sankey, excerpts of which are attached as Exhibit 18 at pp. 58-59; deposition testimony of Terri Peters, excerpts of which are attached as Exhibit 19 at pp. 73-75.

[81] Exhibit 18 at pp. 39-41; 55-57; Exhibit 19 at pp. 69-72.

[82] Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To defeat summary judgment, Ms. Nygren "must do more than simply show there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). She cannot rest on her allegations and denials; she must provide significant probative evidence that would enable a jury to return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Unsubstantiated opinion and speculation are insufficient. *Jones v. La. Dep't of Health & Hosps.*, 471 F.App'x 344, 346 (5th Cir. 2012).

Plaintiff's claims of age discrimination and retaliation based on the relocation requirement (i.e., that she relocate her place of residence to Zone 5 – and to Dallas, Texas in particular) are time-barred.  The relocation requirement was clearly communicated to Plaintiff on July 13, 2018.  Ms. Nygren's July 14, 2018 grievance email to Mr. Philbin makes clear that as of that date she understood that she would no longer have a job if she did not move to Texas. The specific location requirement (move to Dallas) is the only act of alleged retaliation identified by Plaintiff. Although Ms. Nygren could not recall the exact date when Mr. Schumacher told her that she would be required to move to Dallas, Plaintiff admits (based on text message exchanges with Mr. Prettyman) that this specific location requirement was communicated to her no later than August 7, 2018.

When she sent the July 14, 2018 grievance e-mail Ms. Nygren had already formed the belief that the relocation requirement was age discrimination – and intended the e-mail to be a complaint of age discrimination.   In August of 2018 Ms. Nygren and Mr. Sankey were discussing plans to sue Defendant for age discrimination. Ms. Nygren received a written severance package from Mr. Schumacher on November 1, 2018 which confirmed in writing that she would be required to relocate to Dallas, and that because she had not agreed to relocate to Dallas, that her Separation Date from employment would be April 5, 2019.  Plaintiff admits that she understood that if she did not agree to relocate to Dallas, her employment with DTS was going to be terminated effective April 5, 2019.

An ADEA claimant must file a charge of discrimination with the EEOC within 300 days of the challenged employment decision.[83]   In this case, the challenged employment decision is the relocation requirement; and the sole act of alleged retaliation was the requirement that Ms. Nygren relocate specifically to Dallas.  Plaintiff did not file her Charge of Discrimination with

---

[83] 29 U.S.C.A. § 626(d)(1)(B).

the EEOC until October 22, 2019, well more than 300 days after the challenged employment decision was communicated to Ms. Nygren and the alleged retaliatory act by Defendant had occurred.  Accordingly, her claims of age discrimination and retaliation based on the relocation requirement are clearly time-barred and should be dismissed.

Plaintiff will undoubtedly argue that her claims did not accrue, and her deadline for filing an EEOC charge did not begin to run, until her employment with Defendant terminated on April 5, 2019.  This argument is incorrect as a matter of law.  It is well-settled that the statute of limitations for an ADEA claim begins to run at "the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful."[84]  In cases where a plaintiff has been informed of a decision that will result in termination at a later date, the limitations period begins on "the date of notice of the termination, rather than the final date of employment."[85]

The U.S. Fifth Circuit analyzed this issue in *Phillips v. Legget & Platt, Inc.*[86]  There, the employer consolidated the operations of its two Mississippi facilities by closing a plant in Verona and leaving a plant in Houlka open.[87]  In June 2007, the plaintiff, Phillips (age 66), was informed that there were no positions available for her at the Houlka plant and that her employment would be terminated effective July 30, 2007.[88]  She suspected that she was denied a position at the Houlka plant because of her age.[89]  Four days after the end of her employment, the employer recalled Phillips to work in Houlka in a temporary position that did not have a stated end-date.[90]  After approximately five (5) months in this role, she was terminated on January 2,

---

[84] *Phillips v. Legget & Platt, Inc.*, 658 F.3d 452, 456 (5th Cir. 2011) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 7-8 (1981) (emphasis in original).
[85] *Id*. (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988)).
[86] *Id*.
[87] *Id*. at 453-54.
[88] *Id*. at 454.
[89] *Id*.
[90] *Id*.

2008.[91]   On March 5, 2008, 63 days after her termination from the temporary position at the Houlka plant, Phillips filed an age-discrimination charge with the EEOC.[92]

The defendant argued that plaintiff's sole cause of action was her layoff from the Verona facility and that this claim was time-barred because she did not file a timely charge relative to the date she was informed of the termination decision (even though the termination date would not occur until later).[93]   The Fifth Circuit agreed.  It looked to the U.S. Supreme Court's decision in *Del. State Coll. V. Ricks*, which held that a professor's claim of discrimination began to accrue on the date that he was notified of the denial of his tenure, which resulted in a one-year "terminal" contract and ultimate termination.[94]

In *Ricks*, the Court stated that the limitations period began to run on the date the tenure decision was made and communicated to the plaintiff, "even though one of the *effects* of the denial of tenure – the eventual loss of [employment] – did not occur until later."[95]   "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."[96]

The *Phillips* court noted that in *Ricks* the date of termination was certain even though it was some distance in the future.[97]   Thus the statute of limitations began running from the date of notice of the decision.  Likewise, the relocation requirement and the Separation Date of April 5, 2019 were communicated to Ms. Nygren in the severance proposals presented, and Plaintiff clearly knew that her employment would end on that future date if she failed to relocate as required. The *Phillips* court stated that "[a]n employment event that is merely an effect of a prior

---

[91] *Id*.
[92] *Id*.
[93] *Id*. at 455.
[94] *Id*. (citing *Ricks*, 449 U.S. 250, 258 (1980).
[95] *Ricks*, 449 U.S. at 258.
[96] *Id*. at 257.
[97] *Phillips*, 658 F.3d at 456.

employment decision does not constitute a separate and distinct act that begins the calendar anew for bringing an ADEA claim."[98]

The *Phillips* and *Ricks* decisions are directly applicable here.  Plaintiff admits that she was told on July 13, 2018 that she either had to move into her Zone, and by August 7, 2018 specifically to Dallas, or face termination.  This was the point at which the allegedly discriminatory decision was made and communicated to Plaintiff.  Plaintiff admits that she *immediately* believed that this decision was based on her age – as confirmed by her testimony regarding the July 14, 2018 email to Mr. Philbin.  Accordingly, the statute of limitations began to run no later than August 7, 2018, not on the last date of employment (April 5, 2019).

The "continuing violation" theory does not rescue Plaintiff's claims from the statute of limitations defense because the relocation requirement was a discrete employment decision.  The continuing violation theory was addressed by the Supreme Court in *National R.R. Passenger Corp. v. Morgan.*[99]  In *Morgan*, the Supreme Court reversed the Ninth Circuit's broad interpretation of the continuing violation theory (which it applied on the basis of so-called "serial violations").  In doing so, the Supreme Court re-affirmed the continued validity of its prior holdings in *Ricks, supra*, and other cases which recognize the general rule that the time for filing an EEOC charge runs from the date of each alleged discriminatory employment practice.[100]  The Court acknowledged that *hostile work environment claims* are different from discrete employment decisions by their cumulative nature, such that a charge is timely if it is filed within 300 days of any act that is part of the alleged hostile work environment.[101]  But the continuing violation theory does not apply to Plaintiff's claims based on a discrete employment decision -

---

[98] *Id*.
[99] 122 S.Ct. 2061 (2002).
[100] *Id*. at 2071-2073.
[101] *Id*. at p. 2075.

the relocation requirement.[102]

Ms. Nygren's state law claims under the LEDL are also time barred because she did not file her lawsuit within one-year of the alleged discriminatory decision.[103]

### B.   Plaintiff's Claims of Age-Based Discrimination Have No Merit

Plaintiff cannot establish that the relocation requirement (which resulted in the eventual termination of her employment) was unlawful age discrimination in violation of the ADEA or the LEDL.  Ms. Nygren admits that she has no direct evidence that the relocation requirement was imposed on the basis of her age.  Accordingly, the *McDonnell Douglas Corp. v. Green*,[104] burden-shifting analysis applies. To establish a *prima facie* case, a plaintiff must demonstrate that she was: (1) within the protected class; (2) qualified for the position from which she was terminated; (3) suffered an adverse employment decision; and (4) either replaced by someone outside of the protected class, replaced by someone younger, or treated less favorably than similarly situated, younger employees.[105] If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for terminating the employee.[106] This burden is one of production, not persuasion.[107] Once the employer satisfies its burden of production, the plaintiff must present evidence capable of proving that age was the "but for" cause of the termination.[108]

---

[102]Ms. Nygren has also asserted a claim for hostile work environment based on retirement dinners that occurred in January and March of 2019, but Defendant does not seek dismissal of those claims on statute of limitations grounds.
[103]Under the LEDL a plaintiff must file suit within one-year of the challenged employment decision.  La. R.S. 23:303.  In this case, Ms. Nygren did not file her Complaint until more than two years after the relocation requirements were fully communicated to her in July and August, 2018.  Accordingly, even with the full benefit of the maximum six-month tolling of the prescriptive period under the LEDL while a charge of discrimination is pending with the EEOC (which should not even apply here because her EEOC charge was not timely filed), her state law claims under the LEDL are clearly time-barred.
[104] 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).
[105] *Smith v. City of Jackson*, 851 F.3d 183, 196 (5th Cir. 2013).
[106]*Green*, 411 U.S. 792 at 802, 93 S.Ct. 1817.
[107]*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981)
[108] *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-78, 129 S.Ct. 2343 (2009).  Unlike some other anti-discrimination statutes, the ADEA's text does not provide that a plaintiff may establish discrimination by showing

For purposes of this Motion, Defendant assumes that Plaintiff can establish a *prima facie* claim of disparate treatment age discrimination.  In response, Defendant has articulated a legitimate non-discriminatory reason for the relocation requirement – i.e., that Mr. Schumacher wanted to Ms. Nygren to relocate to Dallas because this location put her in the same city as the Zone VP of Operations, other members of the leadership team and the stores she was responsible for supporting. Accordingly, Plaintiff bears the burden of coming forward with specific evidence that Defendant's reasons for implementing the relocation requirement are untrue and are instead a pretext for discrimination on account of age.[109] Ms. Nygren has no factual evidence to meet this burden.

Plaintiff admits that she has no evidence that Mr. Schumacher did not rely on these stated business reasons for implementing the relocation requirement. While Plaintiff may disagree with Mr. Schumacher's business judgment, and will undoubtedly argue that his business objectives could have been accomplished differently, such arguments provide no evidence of age discrimination.[110]

The fact that three Zone HR Directors who were younger than Plaintiff (Ms. Fulner, Ms. Rhoten and Mr. Mapes) were not required to relocate to the cities where their Zone Vice Presidents of Operations were located – whereas she was required to relocate to Dallas - provides no evidence of age discrimination. Ms. Nygren cannot show that she was treated less favorably

---

that age was simply a motivating factor. That means that a plaintiff in an ADEA case cannot prevail by showing an employer's "mixed-motive." *Gross*, 557 U.S. at 174, 176, 129 S.Ct. 2343.

[109] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. Tex. 2012) ("After the employer [provides evidence of a legitimate non-discriminatory reason], 'the plaintiff must show that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.'") (citation omitted).

[110] It is well-settled that an employment discrimination plaintiff does not create issues of material fact by disputing the employer's business judgment for its employment decisions. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 215 (5th Cir. 2018); *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010); *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

than *similarly situated*, younger employees.

The Fifth Circuit has made clear that similarly situated individuals must be "nearly identical."[111] Comparators must be in the same circumstances as Plaintiff in all relevant respects. The three comparators here (Ms. Fulner, Ms. Rhoten and Mr. Mapes) were not similarly situated to Ms. Nygren because it is undisputed that each already resided in their respective Zones, and Mr. Schumacher did not require them to relocate for that reason.

Ms. Nygren has no other evidence showing that her age was the "but for" reason for the relocation requirement that resulted in the subsequent termination of her employment. There is no evidence that Mr. Schumacher or anyone else involved in the decision made relevant age-based comments in the context of the decision.

The fact that Mr. Schumacher used the term "retire" in connection with the severance packages he presented to Ms. Nygren provides no evidence of age discrimination.  As Mr. Schumacher explains in his Unsworn Declaration, the use of the term was intended to guarantee that Ms. Nygren's separation from DTS employment would result in the vesting of her restricted stock awards. As the Fifth Circuit stated in *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, commenting on an employee's eligibility for retirement in the way that Mr. Schumacher did is not evidence of age discrimination.[112]  It does not reference age in a derogatory or stereotypical way and does not show a desire to replace older employees with younger ones.  Nor does it imply that age is a reason for Ms. Nygren's termination.[113]

Plaintiff may also point to the application of the relocation requirement to Jerry Sankey (age 65) and Terri Peters (age 56) and their subjective beliefs that they too were the victims of

---

[111] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *Perez v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004).
[112] 934 F.3d 447, 458 (5th Cir. 2019).
[113] *Id.*

age discrimination.  However, the subjective belief of age discrimination expressed by these "me too" witnesses provides no evidence that Ms. Nygren was subjected to age discrimination.[114] Defendant has filed a Motion *In Limine* to exclude the testimony of Mr. Sankey and Ms. Peters as trial witnesses.  For brevity, Defendant incorporates by reference the arguments asserted in the Motion *In Limine* explaining why these witnesses provide no evidence of age-discrimination as to Ms. Nygren's employment.

### C.      Plaintiff's Retaliation Claims Have No Merit

The ADEA prohibits employers from retaliating against employees for engaging in statutorily protected activities.[115]  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity pursuant to one of the statutes; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action.[116]

"Activities protected under Title VII fall into two broad categories—opposition and participation."[117] Opposition occurred if an employee opposed any practice deemed unlawful by Title VII [or the ADEA].[118] "To satisfy the 'opposition clause,' [plaintiff] need not prove that [defendant's] practices were actually unlawful, but only that [she] had 'a reasonabl[e] belief that the employer was engaged in unlawful employment practices.'"[119]  In opposing unlawful practices, "[m]agic words are not required, but protected opposition must at least alert an

---

[114] In the Fifth Circuit it is well-settled that subjective belief testimony provides no evidence of discrimination and is not sufficient to avoid summary judgment dismissal of an employment discrimination claim. *See Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir.1993) (employee's subjective belief that age discrimination occurred is insufficient to create jury issue when employer articulates an adequate nondiscriminatory business reason for the employment decision).

[115] *See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e–3(a).

[116] *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (Title VII); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA).

[117] *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).

[118] *Id.*

[119] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)).

employer to the employee's reasonable belief that unlawful discrimination is at issue."[120]

Here, the only opposition activity identified by Plaintiff that predates the alleged retaliation (i.e., requiring her to move to Dallas) is her email to Mr. Philbin on July 14, 2018.[121] However, this email was not protected opposition activity. The email discusses unfair treatment, including, but not limited to the relocation requirement. But there is nothing in the email which states a claim or belief by Ms. Nygren that she was being treated differently *because of her age*.

The mere mention of Ms. Nygren's age towards the end of the email did not reasonably alert Mr. Philbin of an allegation that unlawful age discrimination had occurred. The fact that Ms. Nygren initially testified in her deposition that her email did not contain a complaint of age discrimination is telling. The July 14 email is vague, at best, and is therefore not protected opposition activity. Also, there is no evidence of a retaliatory adverse action, as the July 14, 2018 email acknowledges that Ms. Nygren had already been told she was required to move to Texas. Requiring Ms. Nygren to move to Dallas still required her to move to Texas.

But even if the Court were to conclude that Plaintiff can state a *prima facie* claim of retaliation on the basis of the July 14, 2018 email, Mr. Schumacher has stated a non-retaliatory business reason for requiring Ms. Nygren to relocate to Dallas – this is where the Zone Vice President of Operations for Zone 5, Brian Prettyman, resided and Mr. Schumacher believed that Ms. Nygren could best serve the business needs of the Zone from this location. Plaintiff admits that this reason was provided to her by Mr. Schumacher, it is also referenced in Mr. Philbin's

---

[120] *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010) (citations omitted).[120] *Davis v. Dallas Indep. School Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("[The Fifth Circuit has] consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); accord *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015).

[121] Plaintiff counsel's February 13, 2019 letter to DTS would constitute a complaint of age discrimination on Ms. Nygren's behalf. However, the Plaintiff cannot identify any causal link between this opposition activity and a subsequent adverse employment action. As detailed above, Ms. Nygren had been told she had to move to Dallas no later than August 7, 2018, and had been repeatedly told that her Separation Date would be April 5, 2019 several months earlier. No new adverse employment action transpired following the DTS' receipt of the February 13 letter.

email dated July 17, 2018 responding to her grievance.  Plaintiff has no evidence showing that Mr. Schumacher did not rely on this stated business reason and has no other evidence of retaliatory motive.  Plaintiff's retaliation claims fail as a matter of law for this additional reason.

Plaintiff's claim for retaliation under Louisiana law fails because it is well-settled that neither the LEDL nor La. R.S. 51:2256 provide a right of action for retaliation.[122]

### D.   Plaintiff's Claim of *Quid Pro Quo* Age Discrimination Has No Merit

In Count 3 of her Complaint Plaintiff asserts a claim for "*quid pro quo*" age discrimination.  As discussed in the conference with the Court on April 13, 2021, no such claim has ever been recognized by any state or federal court interpreting the ADEA or the LEDL. Plaintiff's counsel can provide no authority supporting such a claim.[123]  The *quid pro quo* age claim is frivolous and should have been withdrawn by Plaintiff as suggested by the Court.  The claim should be dismissed by the Court on summary judgment.

### E.   Plaintiff's Hostile Work Environment Claim Has No Merit

Plaintiff's hostile work environment claim is based on attendance at two retirement dinners – in January and March of 2019.  These retirement dinners happened after Ms. Nygren sent her January 14, 2019 email to Mr. Schumacher stating that she had advised her team of "my retirement." Plaintiff was not subjected to any age-based or other mistreatment at either dinner event.   For harassment to be actionable, it must be based on a protected characteristic and must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[124] Plaintiff can present no such evidence here.  This claim is

---

[122]There is no retaliation claim under the LEDL or La. R.S. § 51:2256. *Glover v. Smith*, 478 Fed.Appx. 236, 244 (5th Cir. 2012); *Lowry v. Dresser, Inc.*, 893 So.2d 966, 967 (La. Ct. App. 2005). Therefore, Plaintiff's LEDL retaliation claim fails as a matter of law.

[123]When challenged to provide any legal authority for the dubious claim, Plaintiff's counsel vaguely alluded to such claim having support in "pattern jury instructions."  However, a review of the Fifth Circuit's pattern jury instructions for age discrimination cases (11.15 *et seq*.) reveals no support for such a claim whatsoever.

[124] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002). *See also Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435,

also frivolous and should have been voluntarily dismissed by Plaintiff as suggested by the Court.[125]

## IV.   CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment should be granted, and Plaintiff's Complaint should be dismissed with prejudice, at her cost.

Respectfully submitted:

*/s/ David M. Whitaker*
DAVID WHITAKER (#21149)
ZOE W. VERMEULEN (#34804)
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
david.whitaker@keanmiller.com
zoe.vermeulen@keanmiller.com
***Counsel for Defendant***
***Dollar Tree Stores, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of April, 2021, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ David M. Whitaker*

---

441 (5th Cir.2011) (pursuant to the ADEA, "[a] workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment" and is objectively unreasonable and offensive).

[125] The hostile work environment harassment claim (which does not involve alleged "tangible employment action") is also barred by the Plaintiff's admitted and unreasonable failure to complain pursuant to the DTS employee complaint procedures under the no harassment policy. *See Faragaher v. City of Boca Raton*, 524 U.S. 775 (1998).