UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTINE NYGREN | CIVIL ACTION NO. 2:20-CV-02714 |
|     Plaintiff | |
| v. | DISTRICT JUDGE: LANCE M. AFRICK |
| DOLLAR TREE STORES, INC. | MAGISTRATE: DANA M. DOUGLAS |
|     Defendant | |

**SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now into Court, through undersigned counsel, comes Defendant, Dollar Tree Stores, Inc. ("DTS"), and submits this supplemental memorandum in further support of its pending Motion for Summary Judgment in accordance with the Court's Order dated June 2, 2021.[1] In this memorandum DTS will specifically address the erroneous arguments on the statute of limitations issues presented by the Plaintiff in her Memorandum in Opposition to Defendant's Motion to Strike and for Sanctions.[2]

The critical point supporting the DTS statute of limitations defense is that the employment decision Ms. Nygren challenges as age discrimination is Mr. Schumacher's implementation of the relocation requirement in July of 2018. The subsequent *effect* of the relocation requirement was the termination of her employment on April 5, 2019. Ms. Nygren was told by Mr. Schumacher that her Dollar Tree employment was going to end on a future date certain if she did not comply with the relocation requirement.[3] By November 1, 2018 Mr. Schumacher had communicated to the Plaintiff in writing that her Separation Date was going to be April 5, 2019 because she had not agreed to relocate to Dallas. The undisputed facts and

---

[1] R. Doc. 58.
[2] R. Doc. 51.
[3] Ms. Nygren was initially told that her separation date was going to be February 1, 2019 if she did not relocate, but the separate date was changed to April 5, 2019 at her request so that she and the other affected Zone HR Directors would receive their 2018 bonus and stock option benefits.

record evidence establish that Ms. Nygren was informed, and more importantly, *understood*, that her Dollar Tree employment would end on April 5, 2019. This notice by DTS and understanding by Ms. Nygren occurred more than 300 days prior to the Plaintiff filing her EEOC Charge on October 22, 2019, such that her claim of age discrimination is untimely.

The Plaintiff's opposition presents a series of convoluted arguments that have no substantive merit. The Plaintiff's tries to avoid her admissions (in her deposition testimony and her pleadings) that she knew her DTS employment would end on a future date certain if she did not comply with the relocation requirement by mischaracterizing these admissions as "subjective beliefs" of the Plaintiff.  This argument misconstrues the holdings of the Fifth Circuit regarding the nature of notice that begins the commencement of the Title VII limitations period. As the Fifth Circuit has made clear, the limitations period begins on "the date of *notice of termination*, rather than the final date of employment."[4] The existence of notice, in turn, "is based upon an objective standard, **focusing upon when the employee knew, or reasonably should have known**, that the adverse employment decision had been made."[5] Accordingly, what Ms. Nygren actually knew – or reasonably should have known – based on what DTS communicated to her regarding a future loss of employment, is not only germane; it is outcome determinative of the statute of limitations issue.

The lynchpin of the Fifth Circuit and Supreme Court holdings that are the basis of the Defendant's statute of limitations defense is simply this – when an employer communicates an employment decision that the employee understands will result in future employment loss, a plaintiff who contends that the underlying employment decision is prohibited employment

---

[4] *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir.1988) (citations omitted).
[5] *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456 (5th Cir. 2011).

-2-

discrimination must file a charge within 300 days of that communicated employment decision, and is not afforded another 300 days from the date of the subsequent termination (resulting from the earlier employment decision) to file a charge. Stated differently, Title VII requires a charge to be filed within 300 days after the "alleged unlawful employment practice occurred," not within 300 days of when the final consequences of the employer's decision are realized. *See* 42 U.S.C. 20003-5(e).

The Plaintiff tries to avoid the plain holding of the Supreme Court's decision in *Ricks* by pigeonholing it as an academic tenure decision that has no bearing on the statute of limitations issues in this case. But a close reading of *Ricks* shows that its core holding is controlling of the statute of limitations issue here. The Supreme Court explained that "[d]etermining the timeliness of Ricks' EEOC complaint, and this ensuing lawsuit, requires us to identify precisely the "unlawful employment practice" of which he complains – which is also true in this case. In *Ricks*, the Supreme Court concluded that the unlawful employment practice of which the plaintiff really complained of was the denial of tenure decision that resulted in the subsequent termination; here the "unlawful employment practice" that Ms. Nygren targets as age discrimination was the "move or be fired edict," which she alleges was only communicated and applied to the older Zone HR Directors – and which she immediately complained of as unlawful age discrimination on July 14, 2018, the day after this requirement was communicated to her by Mr. Schumacher.[6]

---

[6]Whether or not Ms. Nygren had knowledge of all facts that supported her age discrimination claims at that time or learned additional details later, has no bearing on when she was provided notice of the DTS employment decision that would result in the future termination of her employment, and believed that this requirement was being applied to her, Mr. Sankey and Ms. Peters on the basis of age. All that was required to start the statute of limitations clock was notice that the employer had made an employment decision (Mr. Schumacher implementing the relocation requirement), that this employer decision would result in a future termination of employment (on the April 5, 2019 Separation Date) and that Ms. Nygren believed this employment decision was prohibited age discrimination. All three of things had occurred as of July 14, 2019, when Ms. Nygren lodged her emailed age discrimination complaint

Like the Plaintiff in *Ricks*, Ms. Nygren attempts to evade the employer's statute of limitations defense by contending the eventual termination resulting from the employer's earlier decision is the basis of her employment discrimination claim – "Ricks now insists that discrimination motivated the College **not only in denying him tenure, but also in terminating his employment on June 30, 1975**."[7]  Here, Nygren now insists that discrimination motivated Mr. Schumacher not only in promulgating the relocation requirement[8] as a means of getting rid of herself and other older Zone HR Directors, but also in terminating her employment on April 5, 2019 (the Separation Date that had been communicated to her in writing on multiple occasions, as discussed below) based on this same relocation requirement.

The Supreme Court rejected this argument and held Mr. Ricks' claims were untimely:[9]

> It appears that termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure. **In order for the limitations periods to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure.** But no suggestion has been made that Ricks was treated differently from other unsuccessful tenure aspirants. Rather, in accord with the College's practice, Ricks was offered a 1–year "terminal" contract, with explicit notice that his employment would end upon its expiration.

Here, as in *Ricks*, in order for Ms. Nygren's limitations period to commence with the date of discharge, the Plaintiff would have to prove that the manner in which her employment was terminated differed discriminatorily from the manner in which Dollar Tree terminated the employment of the other Zone HR Directors (Mr. Sankey and Ms. Peters) who were subjected to

---

– but in any event, had occurred no later than November 1, 2018 when she received Mr. Schumacher's final severance letter stating that her Separation Date was going to be April 5, 2019 because she had not agreed to relocate to Dallas as required.
[7] 449 U.S. at 257.
[8] Which requirement Ms. Nygren simultaneously argues was pretext for disparate treatment age discrimination; by presenting declarations from herself and former DTS employee David McDearmon.
[9] 449 U.S. at 257-258.

the relocation requirement. Ms. Nygren has not made such a claim in this case, as Mr. Sankey and Ms. Peters were also terminated effective April 5, 2019; with the only difference that Sankey and Peters elected to accept the severance packages that were offered to them (while Ms. Nygren did not). It is critical to note that the Supreme Court did not permit Mr. Ricks to challenge the subsequent termination of his employment by claiming discriminatory treatment as compared to **other professors who were granted tenure**; that is exactly what Ms. Nygren is attempting to do here. The Court did not permit this argument because the tenure decision in Ricks, like Mr. Schumacher's decision to adopt the relocation requirement and apply it to Ms. Nygren, occurred well outside of the charge-filing period – and any employment discrimination claims based on that earlier employment decision is clearly time-barred.

Ms. Nygren's disparate treatment age discrimination claim is based on the fact that Mr. Schumacher did not require three younger Zone HR Directors (who already lived in their zones, and therefore were not similarly situated) to relocate at the time he communicated the relocation requirement to her, Mr. Sankey and Ms. Peters in July of 2018 – and which she understood to be a "move or be fired ultimatum." This was the basis for Ms. Nygren lodging the only internal complaint of age discrimination she ever made regarding the relocation requirement by way of her email to Dollar Tree CEO Gary Philbin on July 14, 2018. The *Ricks* decision makes clear that if Ms. Nygren wished to pursue ADEA claims based on Mr. Schumacher's earlier relocation requirement decision, she had to file an EEOC charge within 300 days of that decision; not within 300 days from when her termination became effective on April 5, 2019.

Plaintiff argues that she was never told she would be "fired," yet nothing in the *Phillips* or *Ricks* decisions requires that the future loss of employment be communicated using any specific language. The question is whether the employer communicated an employment decision

the employee understood would result in future loss of employment by a date certain.  In *Phillips* the plaintiff was told that she faced a future loss of employment (and would be subject to layoff) due to a future facilities closure; in *Ricks* the Plaintiff was informed he had been denied tenure and was placed under a one-year contract.  Neither plaintiff was told they were going to be "fired." Yet in each of these cases, the time period for filing an EEOC charge was held to begin at the point at which the plaintiffs were informed of an employment decision that would result in the future loss of employment, not when the future loss of employment resulting from an earlier employment decision occurred.

The Plaintiff testified in her deposition that she was given two options – relocate or retire.[10]  When asked whether she considered the retirement option proposed by Mr. Schumacher to be a voluntary departure from employment, Ms. Nygren responded "not in this case."[11] Here, the fact that Ms. Nygren was told that she would have to "retire" if she did not relocate – with an April 5, 2019 Separation Date communicated to her in writing multiple times - is a distinction without a substantive difference.  Merriam-Webster's dictionary defines the term "retire" as "the withdrawal from one's position or occupation; conclude one's working or professional career."[12] From a future loss of employment perspective, there is no substantive difference between a firing, a layoff, a retirement or generic separation of employment initiated by an employer.  It is also clear that Ms. Nygren understood that being required to "retire" meant that her Dollar Tree

---

[10] During her deposition Ms. Nygren testified that when presenting the relocation requirement Mr. Schumacher gave her only two options – relocate as requested or retire; she denied that he offered her the opportunity to apply for other Dollar Tree employment (MSJ Exhibit 1 at pp. 177-187); On October 9, 2018 Ms. Nygren sent an email to DTS in-house attorney Kay Stockwell, in which she stated "I then was told I had to move to Dallas, city specific.  I do not want to retire.  I'm being told move to Dallas or retire." (MSJ Exhibit 1 at pp. 300-302; October 9, 2018 email attached as MSJ Exhibit 13).
[11] MSJ Exhibit 1 at p. 184.
[12] Merriam-Webster's Collegiate Dictionary (11th Ed. 2006).

employment was going to be terminated should she fail to relocate as required. Multiple admissions by the Plaintiff confirm this point:

- Ms. Nygren sent an email to CEO Gary Philbin dated July 14, 2018, the day after the relocation requirement was communicated to her by Mr. Schumacher. In this email, which Ms. Nygren verified in her deposition under oath, the Plaintiff stated: "I received a call, yesterday, from Steve Schmacher [sic]. It seems I have until Feb 2019 to move to Texas – **or I no longer have a job**." (emphasis added). Later, in the same email, Ms. Nygren stated "Now – at age 69 – **I am out – unless I pack up my belongings and move**."(emphasis added);[13]

- Paragraph 30 of Plaintiff's Complaint provides: "**In July 2018**, when Chris' new supervisor (Steve Schumacher, HR Vice President) phoned Chris that **she would need to pack up her belongings and move into her Zone or Dollar Tree would fire her in February 2019.**"

- Paragraph 32 provides, in pertinent part: "a. the Zone HR Directors **ordered to 'move or be fired'** were the oldest three (56, 65, 69);"

- Paragraph 34 provides, in pertinent part: "Chris complained that only the oldest three Zone HR Directors (56, 65, and 69) were given the **'move or be fired' ultimatum."** [14]

The Complaint is replete with numerous other references to Ms. Nygren's understanding that her Dollar Tree employment was going to end if she did meet the relocation requirement.[15]

---

[13] MSJ Exhibit 1 at pp. 199-201 and July 14, 2018 e-mail attached to Defendant's MSJ as Exhibit 5.

[14] Contrary to Plaintiff's arguments, Paragraph 34 of the Complaint does have temporal significance relative to the statute of limitations issue in that it is clearly referencing Ms. Nygren's complaint e-mail to DTS on July 14, 2018, which Ms. Nygren admits is the only complaint of age discrimination she personally lodged with DTS regarding the relocation requirement.

[15] Paragraph 45 provides: "Still, Schumacher was silent about Chris' relocation, which she'd mentioned in July, and **the revised 'move or retire' letter** still confirmed that Dollar Tree's relocation requirement was 'to your Zone.'"; Paragraph 54 provides, in pertinent part: "None of her younger comparators were given **the 'relocate or retire (be terminated)' option."** Paragraph 55 provides, in pertinent part: "I do not want to retire --- **I am being told --- move to Dallas or retire."** Paragraph 62 provides: "The problem with Dollar Tree's 'policy' isn't that it requires relocation, it's that it's only being enforced against individuals protected by the ADEA – while younger comparators enjoy continued employment without the **'move to your Zone VP's town (or even into your Zone at all in some cases) or be fired' edict."**; Paragraph 64 provides, in pertinent part: "Dollar Tree held Chris (69), Jerry Sankey (65), and Terri (56) to a higher standard than their 3 younger counterparts, none of whom have been given **the 'move into your zone or be fired/retire' edict** . . . ." ; Paragraph 68 provides: "And despite Chris' repeated insistence that she didn't want to retire, **Chris for months knew Dollar Tree would force it on her**."; Paragraph 72 provides: "At all times relevant to this lawsuit, including at the time of Chris' termination, Schumacher was Dollar Tree's final decision-maker and Dollar Tree gave him the authority to terminate Chris' employment if she didn't submit to the discriminatory **'move or be fired' policy** Dollar Tree only enforced against its oldest Zone HR Directors."; Paragraph 108 alleges that Mr. Schumacher "**proposed Chris comply with a policy where Zone HR**

"Factual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them," and facts admitted in pleadings are "no longer at issue."[16] Plaintiff's opposition cites no authority to the contrary, and these admissions that Ms. Nygren knew that her employment was going to be terminated based on Mr. Schumacher's communication of the relocation requirement cannot be cavalierly disregarded as the advocacy of counsel. Ms. Nygren's admissions are not the expression of "subjective beliefs" of future termination, but are instead indisputable evidence of a clear understanding that her Dollar Tree employment was going to end as of a future date certain if she did not meet the relocation requirement (which she complained in writing on July 14, 2018 was unlawful age discrimination).

Plaintiff's claim that she was not clearly told that her employment would end as of April 5, 2019 if she failed to relocate likewise has no merit and is contrary to the clear and undisputed record evidence. During her deposition Ms. Nygren testified that she told Mr. Schumacher "**I said you gave me a date of April the 5th I had to be out**…"[17] It is also undisputed that Plaintiff was provided three separation letters from Mr. Schumacher, each of which states: "**You will continue in role as a Zone HR Director, reporting to Steve Schumacher, until April 5, 2019 ("Separation Date").**" All three of these documents were received by Ms. Nygren more than 300 days prior to the filing of her EEOC Charge, the last of which was received by e-mail dated November 1, 2018.[18]

The Plaintiff argues that the separation agreement letters had no effect because Ms. Nygren did not execute the accompanying severance agreement. But this argument is incorrect,

---

**Directors would be fired for not relocating into the Zone**" and "proposed Chris comply with **a policy where Zone HR Directors would be fired for not relocating into the city where their Zone VP lived**…"
[16] *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (quoting *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir. 1983).
[17] MSJ Exhibit 1 at p. 325 (emphasis added).
[18] MSJ Exhibit 1 at pp. 278-287; MSJ Exhibits 11, 12 and 14.

and ignores the actual text of each letter. The portion of Mr. Schumacher's letters which advised Ms. Nygren of her Separation Date is not conditioned on her execution of the "General Release and Waiver of Claims Agreement" that accompanied each of the letters (for which Ms. Nygren would receive additional severance benefits). Each document states that her Separation Date was going to be April 5, 2019 because the Company understood that she had decided not to relocate, regardless of whether Ms. Nygren signed the General Release or not. Even though Ms. Nygren disputes what Mr. Schumacher stated in the letter regarding her refusal to relocate to Dallas as of that date, this does not change the fact that Dollar Tree provided clear notice to Ms. Nygren of its intention that her Separation Date was going to be April 5, 2019 based on its belief that she had refused to relocate as required. And it is undisputed that Ms. Nygren never offered or agreed to relocate to Dallas.

At the time she told Mr. Schumacher in December, 2018 that she was not moving to Dallas, Ms. Nygren understood[19] that her employment would be ending effective April 5, 2019 – which is the same Separation Date repeatedly communicated to her by Mr. Schumacher in these separation agreement letters. Ms. Nygren also testified regarding the January 14, 2019 e-mail she sent to Mr. Schumacher advising him that she had told her peers about "my retirement," and that in this discussion she had advised these co-workers "I was supposed to move to Dallas to keep my job. And I wasn't moving to Dallas."[20] This too evidences the Plaintiff's clear understanding that her employment was going to be terminated – which is consistent with Ms. Nygren's earlier admissions in 2018. Ms. Nygren did not first learn that her employment was being terminated on April 5, 2019, as she now claims in her perjurious declaration.

---

[19]MSJ Exhibit 1 at pp. 305-306.

**Conclusion**

The relocation requirement is the specific basis for the Plaintiff's age discrimination claim in this case. It is undisputed that Ms. Nygren knew as of July 14, 2018 (when she sent her complaint e-mail to Mr. Philbin) that her employment was going to end if she did not relocate as required by Mr. Schumacher. It is also undisputed that she believed that the relocation requirement was age discrimination on that same date.[21] By no later than November 1, 2018 DTS had provided Ms. Nygren with a written document[22] plainly stating that she was required to relocate to Dallas, that Mr. Schumacher understood that she had declined to do so, and that as a result her Separation Date from Dollar Tree employment was going to be April 5, 2019. It is also undisputed that Ms. Nygren had received earlier severance letters stating the same April 5, 2019 Separation Date.

The Plaintiff did not file an EEOC charge within 300 days of any of these notifications of impending termination and her age discrimination claims are therefore time-barred under controlling Fifth Circuit and Supreme Court jurisprudence.

Respectfully submitted:

*/s/ David M. Whitaker*
DAVID WHITAKER (#21149)
ZOE W. VERMEULEN (#34804)
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
david.whitaker@keanmiller.com

---

[20] MSJ Exhibit 1 at pp. 292-296; MSJ Exhibit 15.

[21] In Paragraph 7 of her Declaration Ms. Nygren claims that she did not know that the three younger Zone HR Directors were not being required to relocate, but this claim is contradicted by Paragraphs 33- 34 of her Complaint in which she pleads that she was aware of this fact at the time she complained to Dollar Tree management on July 14, 2018.

[22] MSJ Exhibit 14. At p. 4 of her Opposition to Defendant's Motion for Summary Judgment the Plaintiff admits this letter contains a "last day of work" provision.

zoe.vermeulen@keanmiller.com
***Counsel for Defendant***
***Dollar Tree Stores, Inc.***

-11-